IN THE SUPREME COURT OF THE STATE OF DELAWARE

KARL LARSON JR.,[1]                     §
                                        § No. 122, 2022
    Respondent Below,           §
    Appellant,                   §
                                        § Court Below–Family Court
    v.                           § of the State of Delaware
                                        §
DEPARTMENT OF SERVICES                  §
FOR CHILDREN, YOUTH AND                 § File No. 21-07-10TN
THEIR FAMILIES (DSCYF),                 § Petition No. 21-17899
                                        §
    Petitioner Below,            §
    Appellee.                    §

Submitted: August 22, 2022
Decided:   October 25, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

### ORDER

After consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, the appellee's response, the Child Attorney's response, and the record on appeal, it appears to the Court that:

(1) By order dated March 10, 2022, the Family Court terminated the parental rights of the appellant, Karl Larson Jr. (the "Father"), in his minor son (the "Child").[2] The Father appeals.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's mother, who is not a party to this appeal. We refer only to facts in the record that relate to the Father's appeal.

(2)     On appeal, the Father's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c).  Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that the Father's appeal is wholly without merit.  Counsel informed the Father of the provisions of Rule 26.1(c), provided him with a copy of counsel's motion to withdraw and the accompanying brief, and advised him that he could submit in writing any additional points that he wished for the Court to consider.  The Father has not provided any points for the Court's consideration.  The appellee, the Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     In July 2018, DSCYF opened a treatment case with the Father and the Child's mother after the Child's mother left the hospital against medical advice and delivered the Child at home.  The Child was born in critical condition and immediately rushed to the hospital.  The family engaged in treatment, and DSCYF closed its case in 2019.  On September 3, 2020, DSCYF received a hotline report after the Child's younger brother[3] tested positive for fentanyl at birth and the Child's mother tested positive for methadone and fentanyl.  Although the Child's younger brother was admitted to the NICU, the Child's mother left the hospital immediately

---

[3] The Father is not the biological father of the Child's younger brother.

2

after giving birth and evaded DSCYF's attempts to contact her. After repeated unsuccessful attempts to contact either the Child's mother or the Father, DSCYF filed an emergency petition for custody of the Child. After entering DSCYF custody, the Child was taken to Nemours Children's Hospital for a physical evaluation and was found to have an untreated case of diaper rash and rotting teeth in his upper mouth. Nemours also reported that the Child had received prior medical diagnoses that his parents had not addressed as they had been advised to do.

(4) With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[4] At each of the hearings, the Family Court found that the Child was dependent in the Father's care because, among other things, the Father had not demonstrated that he could address the Child's medical needs. Although the Father was attending regular visits with the Child and texted frequently with the Child's foster mother, the Father was notably not attending the Child's many medical appointments. At each of the hearings, the Family Court also found that DSCYF was making reasonable efforts to reunify the family and that it was in the Child's best interests to remain in DSCYF's care and custody.

(5) DSCYF developed a case plan for the Father designed to facilitate his reunification with the Child. The plan identified the Father's substance-abuse and

---

[4] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

mental-health issues as major concerns as well as his lack of stable housing or income. The plan required the Father, who is disabled and requires the assistance of a home health aide, to meet regularly with his primary care physician, follow any recommendations made by his provider, and obtain documentation affirming his ability to care for the Child, despite his physical limitations.

(6) Following a second review hearing on August 12, 2021, the Family Court changed the permanency goal from reunification to termination of parental rights (TPR) and adoption. As of the October 22, 2021 permanency hearing, the Child was still suffering from many medical issues and needed to be catheterized three times daily to accommodate his neurogenic bladder and bowel. The Father had completed a parenting class and had one negative drug screen. However, it was unclear whether the Father had been compliant with his primary care provider's recommendations, and the Father testified that he needs a caretaker when he is getting in and out of the bath and to help around the house to ensure that he does not fall and because he has trouble remembering things. The Family Court found, among other things, that the Father had made little progress toward alleviating or mitigating the reasons why the Child had been placed in DSCYF custody.

(7) At outset of the evidentiary hearing on the TPR petition on January 10, 2022, the Child's mother signed a consent to the TPR petition. The evidentiary hearing proceeded on the TPR petition as to the Father. After the Family Court heard

4

emotional testimony from the Father concerning his recent hardships, including his current homelessness, the Family Court took a brief recess. During the break, the Father signed a consent to the TPR petition. After the Family Court reviewed with the Father the effect of the consent and the rights the Father was relinquishing by signing it, the Family Court accepted the consent and excused the Father from the remainder of the hearing. The Family Court then heard from the Child's permanency worker who testified, among other things, that neither she nor the Child's foster mother had heard from the Father since October 2021. The Father had attended only one out of more than twenty of the Child's medical appointments. Notably, the Father had expressly declined to attend an appointment to learn how to catharize the Child. At the conclusion of the hearing, the Family Court judge indicated that she would enter an order granting the TPR petition based on the parties' consents after the expiration of 14 days.[5]

(8) On January 21, 2022, counsel for the Father received an email from the Father indicating that he wished to withdraw his consent to the TPR petition. Counsel asked the Father to confirm his intent to withdraw his consent in a follow-up email, but the Father did not respond. Nevertheless, the Family Court held a status conference, of which the Father was notified, on February 4, 2022. Although

---

[5] 13 *Del. C.* § 1106B(a)(1) (providing that a party may revoke his consent within 14 days by delivering written notification of revocation to the agency or individual to which his parental rights are to be transferred).

5

the Father failed to appear and counsel had not had further contact with him, the Family Court scheduled a continuation of the TPR hearing for March 10, 2022, to enable the Father to present a defense. The Father did not appear at the March 10, 2022 hearing, and counsel had not had any contact with the Father aside from his initial email indicating that he wished to withdraw his consent. Nor had the Father contacted DSCYF or the Child's foster mother since the January 10, 2022 TPR hearing. After hearing testimony that the Child was faring well in foster care, the Family Court found by clear and convincing evidence that DSCYF had proved that the Father's parental rights should be terminated because of his failure to plan adequately for the Child's physical needs or mental and emotional health and development. The Family Court found that the Father had failed to complete his case plan by failing to obtain housing stability, acquire financial security, or demonstrate that he was capable of addressing the Child's unique medical needs. The Family Court also found by clearing and convincing evidence that it was in the Child's best interest that the Father's parental rights be terminated. Following the hearing, the Family Court entered an order memorializing its findings. This appeal followed.

(9) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal

---

[6] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[8] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[9] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[10]

(10) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition[13] and proof that DSCYF made *bona fide* reasonable efforts to preserve the family unit.[14] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of

[7] *Id.* at 440.
[8] *Id.*
[9] *Id.*
[10] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[12] *Id.* at 537.
[13] 13 *Del. C.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).
[14] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

the child.[15]  Both of these requirements must be established by clear and convincing evidence.[16]

(11)   Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of the Father's parental rights was appropriate based on his failure to plan adequately for the Child's physical needs[17] and that the Father was not able or willing to assume prompt physical custody of the Child and to pay for the Child's support.[18]  The Family Court also found, by clear and convincing evidence, that DSCYF had made *bona fide* reasonable efforts to reunify the Child with the Father.  Finally, the Family Court examined the best-interests factors set out in 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of the Father's parental rights was in the Child's best interest.

(12)   The Father has not submitted any points for this Court's consideration on appeal.  Appointed counsel represents that she has determined that no arguably appealable issue exists, but also states that if "required to make an argument" she would argue that the Family Court should have found that the Father had completed

---

[15] *Shepherd*, 752 A.2d at 536-37.

[16] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[17] 13 *Del. C.* § 1103(a)(5).

[18] *Id.* § 1103(a)(5)(a)(4).

the substance abuse component of his case plan.[19]  We find no merit to this argument. The Family Court did not base its determination that termination of the Father's parental rights was appropriate on his failure to comply with the substance-abuse component of his case plan.  Rather, the Family Court found that termination was appropriate based on the Father's failure to plan because he had not obtained housing stability, acquired financial security, or demonstrated that he could physically care for the Child.  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts.  We therefore conclude that the Father's appeal is wholly without merit and devoid of any arguably appealable issue.  And we are satisfied that the Father's counsel made a conscientious effort to examine the record and the law and properly determined that the Father could not raise a meritorious claim in this appeal.

---

[19] Once counsel has made a conscientious examination of the record and the law and concluded that the appeal is wholly without merit, she should not make hypothetical arguments that she has determined to be without merit.  Rather, counsel should refer to any facts, evidence, or significant pretrial and trial applications and rulings that may support the appeal and provide the appellant's points, if any. Del. Supr. Ct. R. 26.1(c)(i).

9

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice